[Cite as *State v. Oviedo*, 2015-Ohio-135.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio

        Appellee

v.

Ricardo Oviedo

        Appellant

Court of Appeals Nos. WD-13-085
WD-13-087

Trial Court Nos. 13 CR 337
12 CR 571

**DECISION AND JUDGMENT**

Decided:  January 16, 2015

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Tim A. Dugan, for appellant.

* * * * *

**JENSEN, J.**

## Introduction

{¶ 1} Appellant, Ricardo Oviedo, appeals his conviction for failure to appear, a fourth degree felony, in violation of R.C. 2937.29 and 2937.99.  Appellant argues that his conviction was against the manifest weight of the evidence and that he received ineffective assistance of counsel.  For the reasons that follow, we affirm the judgment of the trial court.

## I. Factual Background

{¶ 2} On October 18, 2014, a grand jury sitting in Wood County, Ohio indicted appellant on two felony offenses: illegal conveyance of weapons onto the grounds of a specified governmental agency, in violation of R.C. 2921.36(A)(1)(G)(1), a felony in the third degree (Count I) and receiving stolen property, in violation of R.C. 2913.51(A)(C), a felony in the fourth degree (Count II). (Wood County case No. 12 CR 571.) On October 29, 2012, the trial court released appellant on his own recognizance after appellant signed a bond wherein he promised, among other things, to appear in court as required.

{¶ 3} On April 22, 2013, the state dismissed the weapon's charge in exchange for appellant's guilty plea to the receiving stolen property charge. The plea required appellant to make restitution to the owner of the vehicle, appellant's cousin, in the amount of $1,476.78. At the conclusion of the hearing, at which appellant was present, the trial court found appellant guilty, ordered a presentence investigation report, and set the matter for sentencing on June 24, 2013, at 9:30 a.m. A notice of hearing was sent to appellant at the address provided by him on his bond form.

{¶ 4} Appellant failed to appear at the June 24, 2013 sentencing hearing, although his court-appointed attorney did attend. The attorney told the court that appellant's girlfriend had contacted his office that morning to explain that appellant was suffering some significant health problems necessitating a trip to the hospital. The prosecutor

2.

requested that the court issue a statewide warrant but added that, if appellant provided proof of his hospitalization, then the state would not object to the court vacating the warrant. The trial court authorized the issuance of the warrant, and a copy was sent to appellant.

{¶ 5} On July 14, 2013, appellant was arrested and charged with failure to appear, in violation of R.C. 2937.29 and 2937.99(A) and (B). (Wood County case No. 13 CR 337).

{¶ 6} On September 16, 2013, the sentencing hearing was held on appellant's conviction for receiving stolen property. In lieu of prison, the court sentenced appellant to community control for a period of two years. While advising appellant of his rights and obligations, the trial court specifically instructed appellant against consuming alcoholic beverages during the two-year period. The court advised appellant that his failure to abide by the terms of the community control sanction could result in more restrictive sanctions, including the imposition of a prison term up to 18 months.

{¶ 7} One week later, on September 23, 2013, the parties were back in court. According to the record, appellant had reported to his probation officer while inebriated. After testing positive for alcohol, appellant was taken into custody. The state filed a petition to revoke appellant's community control, and the matter was set for hearing. By this time, appellant's attorney had withdrawn his representation as to both matters, and a new attorney had been appointed.

{¶ 8} On November 20, 2013, two matters came before the court: the trial of appellant for his failure to appear and a pretrial hearing for his alleged community control

3.

violation. With regard to the latter, appellant conceded the violation and waived his right to a full hearing. Finding that appellant was no longer amenable to community control, the trial court sentenced appellant to serve 17 months in prison for receiving stolen property.

{¶ 9} The state then presented its case for appellant's failure to appear. The state called Mario Rodriguez to testify. Mr. Rodriguez is appellant's cousin and was the person whose vehicle appellant was found to have been riding in when arrested for receiving stolen property. Rodriguez lived near appellant. On June 24, 2013, the day of appellant's sentencing, Rodriguez testified that he saw appellant around noon, in their neighborhood. Rodriguez observed that appellant acted normally and did not appear to be in any distress. Rodriguez claimed that appellant was drinking from a paper bag at the time, which Rodriguez assumed was beer. Rodriguez added he frequently saw appellant walking in their neighborhood drinking beer.

{¶ 10} The trial court's criminal bailiff testified that the court never received any records explaining appellant's whereabouts on June 24, 2013.

{¶ 11} Appellant called J. Scott Hicks, his first attorney, to testify. Hicks recalled very little relative about the June 24, 2013 hearing. He did recall that, on that day or the next, appellant's girlfriend, Cheryl Gensler, contacted Hicks about appellant's failure to attend the hearing. Hicks confirmed that he received medical records from St. Luke's Hospital relative to appellant's hospitalization.

4.

{¶ 12} Appellant's girlfriend testified on appellant's behalf. Gensler testified that appellant suffers from several health conditions including colon cancer and heart problems. Gensler testified that appellant's heart was racing on the morning of June 24, 2013, and that she took him to St. Luke's Hospital around 5:00 or 6:00 a.m. She estimated that appellant was released between 11:00 a.m. and 3:00 p.m. Around noon, Gensler contacted Hicks' office to let him know that appellant had been hospitalized. She also requested that the hospital send records to Mr. Hicks' office, confirming appellant's hospital visit. Gensler denied that appellant was outside drinking following his release from the hospital.

{¶ 13} At the conclusion of the hearing, the court found appellant guilty of failing to appear. By judgment entry journalized on December 6, 2013, the trial court sentenced appellant to a prison term of six months for failing to appear, in addition to the 17 months for receiving stolen property. The court ordered that the sentences be served consecutively.

{¶ 14} Appellant obtained new counsel and filed a notice of appeal on December 13, 2013. Appellant alleges two assignments of error:

1. Appellant's conviction fell against the manifest weight of the evidence.

2. Appellant received ineffective assistance of counsel.

5.

## II. Law and Analysis

{¶ 15} Appellant does not challenge his conviction for receiving stolen property. Appellant does claim, however, that his conviction for failure to appear was against the manifest weight of the evidence. R.C. 2937.99 provides, in part,

(A) No person shall fail to appear as required, after having been released pursuant to section 2937.29 of the Revised Code. Whoever violates this section is guilty of failure to appear and shall be punished as set forth in division (B) or (C) of this section.

(B) If the release was in connection with a felony charge or pending appeal after conviction of a felony, failure to appear is a felony of the fourth degree.

{¶ 16} To demonstrate that a defendant violated the statute, the state "must show that the offender (1) was released on his own recognizance, and (2) recklessly failed to appear at the court proceeding as required by the Court." *State v. Hicks,* 4th Dist. Highland No. 08CA6, 2009-Ohio-3115, ¶ 31, quoting *State v. Platz,* 4th Dist. Washington No. 00CA36, 2001 WL 925410, *2 (Aug. 6, 2001). A person acts recklessly when, "with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶ 17} In this case, appellant argues that the state failed to show that he acted recklessly. Appellant blames his first lawyer whom he was relying upon to "keep him

informed of what he needed to do and when he needed to turn himself in." Appellant also argues that the trial court "lost its way" in accepting the testimony of Rodriguez who had a "clear bias" against him.

{¶ 18} "In determining whether a conviction is against the manifest weight of the evidence, we do not view the evidence in a light most favorable to the state. Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson,* 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *State v. Thompkins,* 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387.

{¶ 19} In a bench trial, as in this case, the court assumes the fact-finding function of the jury. Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, it must be determined that the court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *State v. Archie,* 6th Dist. Lucas Nos. L-02-1225, L-02-1262, 2004-Ohio-4844, ¶ 8, citing *Thompkins, supra*, at 387. "Due deference must be accorded the findings of the trial court because the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.* at ¶ 8.

7.

{¶ 20} We have thoroughly reviewed the evidence in this case and find no indication that the trial court lost its way or created a manifest miscarriage of justice by finding that appellant was reckless.

{¶ 21} There is no dispute that appellant was out on bond or that he failed to appear for his hearing, set for 9:30 a.m. on June 24, 2013. Appellant's girlfriend, Gensler, testified that appellant was released from the hospital between 11:00 a.m. and 3:00 p.m. while Rodriguez testified that he saw appellant drinking around noon. Appellant argues that the trial court lost its way in accepting the testimony of Rodriguez, over that of Gensler. Under either scenario, however, appellant would have missed the 9:30 a.m. hearing. What this court is struck by is appellant's failure to communicate his alleged inability to attend the hearing. That is, assuming that appellant was hospitalized at the start of his 9:30 a.m. hearing, he admittedly made no effort to contact the trial court or his lawyer at that time to explain his absence. Instead, through his girlfriend, he waited at the very least, two and one-half hours, at noon, to contact his lawyer. By then, the hearing was long over.

{¶ 22} Moreover, upon his release from the hospital, his girlfriend asked the hospital to send papers to appellant's lawyer. In other words, appellant did not personally request documentation then and there, nor did he personally take responsibility to get the records into the hands of his lawyer or the court, instead relying on a third party to act on his behalf.

8.

**{¶ 23}** We are most puzzled by appellant's failure to act after being served with a statewide warrant. That is, he did not contact his lawyer, the court, or the sheriff's office. Instead, he waited. Three weeks later, he was arrested. He then blamed his lawyer for failing to tell him "about what needed to happen after missing [his] sentencing date."

**{¶ 24}** In *State v. Smith,* 10th Dist. Franklin No. 14AP-240, 2014-Ohio-4945, the Tenth Appellate District recently upheld a finding of recklessness by a defendant who was convicted for failing to appear. In that case, the defendant overslept and missed her trial. An hour after the hearing was set to begin, the defendant awoke and contacted the courtroom bailiff. She then attempted to turn herself in but was turned away because a warrant had not yet been issued. Despite her efforts, the defendant was found guilty for failing to appear. The court of appeals affirmed the conviction. It found that "the jury still could have found appellant acted recklessly when, after not sleeping all night, she allowed herself to fall asleep just prior to the time she needed to prepare for court. * * * We cannot find that the jury, as the trier of fact, clearly lost its way and created such a manifest miscarriage of justice * * *." *Id*. at ¶ 13. *See also State v. Platz,* 4th Dist. Washington No. 00CA36, 2001-Ohio-2541 (affirming failure to appear conviction because jury gave little weight to defendant's assumption that his attorney obtained a continuance and his alleged health problems).

**{¶ 25}** In this case, we find substantial evidence upon which the trier of fact could reasonably conclude that appellant, "with heedless indifference to the consequences,

* * * perversely disregarded a known risk that his conduct [was] likely to cause a certain result," namely his arrest for failing to appear. R.C. 2901.22(C).

{¶ 26} Based upon all of the above, we cannot say that the court, sitting as the trier of fact, clearly lost its way and created such a manifest miscarriage of justice that appellant's conviction must be reversed and a new trial granted. Therefore, we find that appellant's failure to appear conviction is not against the manifest weight of the evidence. Appellant's first assignment of error is not well-taken.

{¶ 27} A claim of ineffective assistance of counsel is evaluated under the deficiency standard set forth in *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus:

> 2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (*State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), followed.)

> 3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.

10.

**{¶ 28}** Ohio law presumes the competence of a properly licensed attorney. *State v. Robinson,* 6th Dist. No. L-10-1369, 2012-Ohio-6068, ¶ 72. There is thus "a strong presumption that counsel's performance falls within the wide range of reasonable professional performance." *Bradley* at 142. Even if counsel's performance fell below an objective standard of reasonable representation, the level of prejudice must be such that, but for counsel's deficiencies and errors there is a reasonable probability that the trial's outcome would have been different. *Id.* Trial strategies and tactical choices do not constitute ineffective assistance merely because in hindsight they appear questionable or ineffective. *State v. Clayton,* 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980).

**{¶ 29}** In support of his second assignment of error, appellant complains that his second trial attorney "failed to obtain" the hospital records, and that, if the records had been admitted into evidence he "would have been acquitted at trial."

**{¶ 30}** We disagree. First, the record indicates that both attorneys had possession of the hospital records. Appellant has failed to demonstrate, however, that the records would have exonerated him. That is, as discussed previously, whether he was hospitalized for all or part of the day, he was still reckless in his conduct. Therefore, appellant failed to demonstrate a reasonable probability that, if the records had been admitted, he would have been acquitted. Therefore, appellant's claim for ineffective assistance of counsel fails as a matter of law. Appellant's second assignment of error is found not well-taken.

11.

**{¶ 31}** For the foregoing reasons, we affirm the judgment of the Wood County Court of Common Pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Arlene Singer, J.

James D. Jensen, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.